```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE WESTERN DISTRICT OF PENNSYLVANIA
```

GENERAL WAREHOUSEMEN &            )
EMPLOYEES UNION, NO. 636,         )
                                  )
            Plaintiff,            )
                                  )
       vs.                        ) Civil Action No. 09-471
                                  )
O.K. GROCERY, INC.,               )
                                  )
            Defendant.            )

**MEMORANDUM**

## I. INTRODUCTION

In this civil action, Plaintiff, General Warehousemen & Employees Union, No. 636 ("the Union"), seeks enforcement of a collective bargaining agreement requiring arbitration of disputes under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185.[1]  Defendant, O.K. Grocery, Inc. ("the Employer"), has filed a motion to dismiss the Union's complaint pursuant to

---

[1]Section 301(a) of the Labor Management Relations Act provides:

> **§ 185.  Suits by and against labor organizations**
>
> **(a) Venue, amount, and citizenship**
>
> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.
>
> * * *

1

Fed.R.Civ.P. 12(b)(6). For the reasons set forth below, the Employer's motion will be denied.

## II. STANDARD OF REVIEW

When ruling on a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the Court must accept the allegations in the complaint as true, read those allegations in the light most favorable to the plaintiff, and determine whether a reasonable reading indicates that relief may be warranted. See Umland v. PLANCO Financial Service, Inc., 542 F.3d 59, 64 (3d Cir.2008).

If, on a motion under Rule 12(b)(6), matters outside the pleadings are presented to and not excluded by the court, the motion must be converted to a motion for summary judgment under Fed.R.Civ.P. 56, and all parties must be given a reasonable opportunity to present all the material that is pertinent to the motion. See Fed.R.Civ.P. 12(d). However, conversion is not required in certain limited circumstances. As noted by the Court of Appeals for the Third Circuit in In re: Rockefellor Center Properties, Inc. Securities Litigation, 184 F.3d 280 (3d Cir. 1999):

* * *

> Although the plain language of Rule 12(b) seems to require conversion whenever a district court considers materials outside the pleadings, we and other courts of appeals have held that a court may consider certain narrowly defined types of material without converting the motion to dismiss. In In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410 (3d Cir.1997), we held that a court can consider a "'document *integral to or explicitly relied upon* in the

2

complaint.'" Burlington, 114 F.3d at 1426 (quoting Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1220 (1st Cir.1996)). And in PBGC v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir.1993), we decided that a district court may examine an "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." The rationale for these exceptions is that "the primary problem raised by looking to documents outside the complaint - lack of notice to the plaintiff - is dissipated '[w]here plaintiff has actual notice ... and has relied upon these documents in framing the complaint.'" See Burlington, 114 F.3d at 1426 (quoting Watterson v. Page, 987 F.2d 1, 3-4 (1st Cir.1993)). (footnote omitted).

\*   \*   \*

184 F.3d at 287.

In the present case, the Union attached five exhibits to its complaint, and the Employer has attached six exhibits to the motion to dismiss.[2] Because the Union's complaint is based on these exhibits, the exhibits will be considered by the Court in ruling on the Rule 12(b)(6) motion.

---

[2] The exhibits attached to the Union's complaint include a copy of Article IX of the collective bargaining agreement between the parties (Exh. 1), a grievance filed by the Union with the Employer on August 11, 2008 (Exh. 2), and copies of correspondence between counsel for the Union and counsel for the Employer dated January 9, 2009 (Exh. 3), March 12, 2009 (Exh. 4) and March 16, 2009 (Exh. 5) concerning the Union's demand for arbitration. The exhibits to the Employer's motion to dismiss consist of additional correspondence between counsel concerning the Union's demand for arbitration dated January 15, 2009 (Exh. B), January 29, 2009 (Exh. C), February 12, 2009 (Exh. D), March 3, 2009 (Exh. A), March 6, 2009 (Exh. F) and March 10, 2009 (Exh. E).

### III. FACTUAL BACKGROUND

The Union and the Employer are parties to a collective bargaining agreement ("the Agreement") which governs wages, hours and other terms and conditions of employment by the Employer. The Agreement was effective from September 20, 2003 through September 19, 2008. (Complaint, ¶ 5). Article IX of the Agreement, which is captioned "GRIEVANCE AND ARBITRATION PROCEDURE," governs the manner in which disputes between the parties will be resolved and applies to all disputes relating to the Agreement. (Complaint, Exh. 1).

On August 7, 2008, the Employer discharged 11 employees covered by the Agreement for alleged theft, dishonesty and abuse of company property. On August 11, 2008, the Union filed a single grievance with the Employer on behalf of all 11 employees seeking their reinstatement and back pay. (Complaint, ¶¶ 7-8). The grievance, which was addressed to the Employer's Vice President, states:

> Dear Bob:
>
> On August 7, 2008 the company issued a discharge letter to 11 employees for a series of violations pertaining to the Labor Standard. I am sending this letter as a formal grievance and I am asking for all information pertaining to these discharges. In the past when issues like this come up the Company has always given the Union the opportunity to address these types of situations. I am asking to sit down with you to discuss this and hope that the company will reconsider and reinstate these employees as soon as possible.

>      Please let me know as soon as possible.
>
>                          Thank you,
>                          Guy W. Johnston, IV
>                          Secretary-Treasurer
>                          Principal Officer

(Complaint, Exh. 2).

Between August 11, 2008 and January 8, 2009, the parties exhausted the grievance procedures set forth in Article IX of the Agreement (Complaint, ¶ 9), settling the grievance with respect to 4 of the 11 discharged employees.[3] (Motion to Dismiss, Exh. A).

On January 9, 2009, counsel for the Union made the following demand for arbitration in a letter to the Employer's counsel:

> Dear Ms. Flynn:
>
>      This is to follow up our discussions regarding the Highlift discharges and the Arnold discharge. Enclosed is the [Federal Mediation and Conciliation Service] form with the Union's check for submission to the FMCS to select a panel for each greivance (sic).
>
>      If you have any question with regard to this matter please do not hesitate to contact me.
>
>                          Very truly yours,
>                          Lawrence R. Chaban

(Complaint, Exh. 3).

The FMCS form enclosed with the Union's demand for arbitration dated January 9, 2009 described the issue presented as "Discharge regarding productivity standards." (Complaint, Exh. 3).

---

[3]The settlement involved reinstatement of the 4 employees by the Employer. (Motion to Dismiss, Exh. A).

Attorney Flynn responded to the Union's demand for arbitration by letter dated January 15, 2009, stating:

> Dear Mr. Chaban,
>
> I am writing on behalf of OK Grocery Company to respond to your letter dated January 9, 2009. I am concerned that there is some confusion, as well as some disagreement, as to what we are arbitrating.
>
> In your letter, you refer to the "highlift discharges, (sic) and in the FMCS form, you refer to them as "discharges regarding productivity standards." I am assuming that these are the discharges of the seven employees for allegedly sabotaging the labor standards. Please confirm whether this is correct.
>
> In addition, as I have indicated to you before, at the time of the settlement of four of the cases, the Company had an agreement with the Union Business Agent that the remaining seven would be tried individually. As you are aware, an express agreement between the parties to individually arbitrate these grievances is controlling.
>
> Accordingly, upon receipt of the clarification and the additional FMCS forms, the Company is prepared to proceed with the arbitrations.
>
> Very truly yours,
> Susan Gromis Flynn

(Motion to Dismiss, Exh. B).

On March 12, 2009, after repeated attempts to have the Employer file the FMCS form enclosed with the Union's initial demand for arbitration dated January 9, 2009 (Motion to Dismiss, Exhs. C, D, E and F), Mr. Chaban sent the following letter to Ms. Flynn:

> Dear Ms. Flynn:
>
> I am writing in response to your March 10, 2009 letter. I cannot agree to sign the FMCS form that you had forwarded

6

> to me which limits the issue solely to the agreement you
> allege between the employer and the union.  The form that
> you sent would not permit the arbitrator to hear the
> discharge matters involving these individuals.
>
> I am returning to you the checks along with another
> FMCS form which reserves both the alleged agreement and the
> discharge for violation of labor standards as the issue in
> these matters.  Since I believe that this encompasses the
> positions of both parties I would appreciate it if you would
> forward this on to the FMCS.  As you will note I did include
> a regional selection based upon our prior correspondence.
>
> > Very truly yours,
> > Lawrence R. Chaban

(Complaint, Exh. 4).

The FMCS form enclosed with Mr. Chaban's March 12, 2009 letter described the issues to be decided by the arbitrator as "Discharge for labor standards violation; alleged agreement regarding arbitration."  (Complaint, Exh. 4).

By letter dated March 16, 2009, Ms. Flynn advised Mr. Chaban that the Employer was unwilling to submit the FMCS form prepared by the Union on March 11, 2009, insisting that the initial arbitration be limited to a determination of whether the Union breached an oral agreement to submit the grievance as to the remaining 7 discharged employees for individual arbitrations. (Complaint, Exh. 5).

In the complaint, which was filed on April 20, 2009, the Union asserts that the Employer's failure and refusal to arbitrate the procedural issue and the grievance as presented in the FMCS form dated March 11, 2009 violates the Agreement and is

7

without legal justification. The Union further asserts that it has no adequate remedy at law, since only specific enforcement of the provisions of the Agreement relating to arbitration will provide the Union with the relief required under the circumstances.[4] (Complaint, ¶ 17).

## IV. LEGAL ANALYSIS

Noting that the issue of whether the grievance filed by the Union as it pertains to the remaining 7 discharged employees should be resolved in a single arbitration or in 7 separate arbitrations is a procedural issue that must be decided by the arbitrator, the Employer maintains that the dismissal of this action is warranted. See Green Tree Financial Corp. v. Bazzle, 539 U.S. 444 (2003); Certain Underwriters at Lloyd's London v. Westchester Fire Ins. Co., 489 F.3d 580 (3d Cir.2007). After consideration, the Court does not agree.

A review of the Union's complaint clearly shows that it is not seeking a determination by the Court of whether an agreement was reached between the parties to resolve the August 11, 2008 grievance as to the remaining 7 discharged employees through individual arbitrations. In fact, this very issue was included

---

[4]In the complaint, the Union also seeks a judgment declaring that the Employer is obligated to arbitrate the grievance. (Complaint, ¶ 17). This requested relief is unnecessary. It is clear from the briefs and exhibits submitted in support of the motion to dismiss that the Employer does not dispute the arbitrability of the grievance under the parties' Agreement.

in the FMCS form prepared by the Union on March 11, 2009 for decision by the arbitrator. (Complaint, Exh. 4). Rather, the Union is seeking specific enforcement of Article IX of the Agreement through an order compelling the Employer to arbitrate the August 11, 2008 grievance as to the remaining 7 discharged employees which no one disputes is subject to arbitration under the Agreement.

Under the circumstances, the issue presented by the Union's complaint is whether the Employer's insistence on a separate arbitration of the procedural issue before submission of a FMCS form for arbitration of the grievance itself constitutes a refusal to arbitrate the August 11, 2008 grievance in violation of the Agreement. If so, the Court has the power to compel the Employer to arbitrate the grievance under the Labor Management Relations Act in conjunction with the procedural issue. See Intern. Ass'n of Machinists and Aerospace Workers, AFL-CIO v. General Electric Co., 406 F.2d 1046, 1050 (2d Cir.1969)(The Labor Management Relations Act authorizes enforcement of promise to arbitrate contained in collective bargaining agreement); Fur Dressers Union Local 2F v. DeGeorge, 462 F.Supp. 890, 893 (M.D.Pa.1978)(It is court's duty to enforce an agreement of labor and management to arbitrate their disputes); General Bldg. Contractors Ass'n, Inc. v. Local Unions 542, 542-A, 542-B, Intern. Union of Operating Engineers, 371 F.Supp. 1130, 1134

(E.D.Pa.1974)(District Court has the power to order that labor dispute be submitted to grievance and arbitration procedures if the dispute concerns a grievance which both parties agreed to arbitrate); <u>Honeywell, Inc. v. United Instrument Workers Local No. 116</u>, 307 F.Supp. 1126, 1128 (E.D.Pa.1970)(It is clear that a grievance arbitration provision in a collective bargaining agreement may be enforced by reason of Section 301(a) of the Labor Management Relations Act); <u>Philadelphia Marine Trade Ass'n v. Intern. Longshoremen's Ass'n, AFL-CIO</u>, 265 F.Supp. 246, 248 (E.D.Pa.1967)(The Court has the power to compel a union to submit an issue to arbitration if under the labor contract it is a matter subject to arbitration).

Based on the foregoing, the Employer's motion to dismiss will be denied.

*William L. Standish* (signature)
William L. Standish
United States District Judge

Date: July 21, 2009